IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL T. RISINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-3316-CV-S-NKL-SSA |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Michael T. Risinger's ("Plaintiff" or "Risinger") Motion for Summary Judgment [Doc. # 13]. Risinger seeks judicial review of the Commissioner's denial of his request for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the Administrative Law Judge's decision is supported by substantial evidence in the record as a whole, Risinger's Motion is denied.

**I.    Factual Background**

Risinger was born on December 11, 1974, making him 29 years old at the alleged date of onset and 31 at the time of the ALJ's decision in this case. (Tr. 16, 50, 53-54,

---

[1] Upon review of the record and the law, the Court finds the Defendant's position persuasive. Portions of the Defendant's briefs are quoted without citation designated.

1

453). He has a high school education, followed by two years of college study which did not result in a degree. (Tr. 73, 453). Until his alleged onset date, Risinger worked every quarter of every year since 1991 (when he was 17 years old) as a fast food worker (including experience as a "team trainer"), an automobile body repair worker, and an auto parts salvage worker (including experience as a "lead worker"). (Tr. 21, 55, 68, 84-88, 108, 454-455).

On November 6, 2003, Risinger filed an application for Disability Insurance Benefits under Title II of the Social Security Act, alleging disability since August 18, 2003, due to diffuse chronic pain, secondary to fibromyalgia syndrome; irritable bowel syndrome; chronic anxiety (or panic disorder); major depressive disorder; and chronic fatigue, secondary to fibromyalgia syndrome.

Risinger's medical records indicate that his primary care physician from August 6, 2002 through March 21, 2006 was Troy Bardon, M.D., of the St. John's Rogersville Clinic in Rogersville, Missouri. As Risinger's primary point on appeal is that the ALJ did not afford sufficient weight to Barton's opinions as a treating physician, the Court summarizes his opinions below.

The record shows Dr. Barton completed a single-page questionnaire on April 1, 2004, at the request of the state agency assisting the Commissioner with regard to Plaintiff's claim. (Tr. 288). In response to the questions posed on the form, Dr. Barton made the following handwritten findings regarding Plaintiff's condition and functional limitations :

2

- diffuse joint and muscle pain and aches,

- unable to lift or carry more than 5 pounds for more than 10 minutes every hour,

- antalgic gait with limited range of motion in the cervical and lumbar spine,

- diffuse muscle tenderness and muscle spasm in and near the cervical, thoracic, and lumbar spine,

- difficulty concentrating, staying focused for more than 5 minutes at a time,

- severe inability for social adaption,

- severe fatigue, and

- history of panic attacks with chest pain, sweating, and numbness in extremities.

(Tr. 288). The record also shows Dr. Barton completed a detailed Fibromyalgia Syndrome Assessment form dated July 31, 2004, assessing Risinger's functional limitations. (Tr. 321-327). On this assessment form, Dr. Barton noted diagnoses of Fibromyalgia Syndrome (as defined by the American College of Rheumatology, including "multiple trigger points"), Chronic Fatigue, Irritable Bowel Syndrome (IBS), Major Depressive Disorder (MDD), Generalized Anxiety Disorder (GAD), and Panic Attacks. (Tr. 318). Specific symptoms supporting these diagnoses included: chronic pain, non-restorative sleep, muscle weakness, breathlessness with panic attacks, morning stiffness, subjective swelling, frequent severe headaches, numbness and tingling with panic attacks, chronic fatigue, anxiety/panic attacks themselves, irritable bowel syndrome, and depression. (Tr. 318).

Dr. Barton estimated the severity of Plaintiff's pain to be "severe" and its

frequency to be "constant" in 10 specific locations on Plaintiff's body, identifying essentially 10 of the 18 tender points, or trigger points, assessed for fibromyalgia syndrome on an anatomical body chart. (Tr. 318-319). Objective signs of these diagnoses and symptoms noted by Dr. Barton included observable spasm, muscle weakness, chronic fatigue, impaired sleep, impaired appetite, limitation of motion, weight change, and reduced grip strength. (Tr. 319). Dr. Barton indicated Plaintiff's symptoms would interfere with "attention and concentration" needed to perform work duties "at least frequently," with "frequently" being defined as 34 percent to 66 percent of an eight-hour work day. (Tr. 319). As to workplace stress, Dr. Barton found Plaintiff would have difficulty with the following:

- public contact,
- routine, repetitive tasks at consistent pace,
- detailed or complicated tasks,
- strict deadlines,
- close interaction with coworkers/supervisors,
- fast-paced tasks (e.g., production line), and
- exposure to work hazards (e.g., heights or moving machinery, temperature extremes, and vibrations).

(Tr. 320). Dr. Barton noted that Plaintiff's depression and anxiety medications cause, as a side effect, drowsiness and sedation for Plaintiff. (Tr. 320). When placed in a competitive work situation, Dr. Barton indicated the following physical limitations for Risinger:

4

- only walk equivalent of 2 city blocks without rest because of severe pain,
- only sit about 2 hours total in an eight-hour work day, with normal breaks,
- only stand or walk about 2 hours total in an eight-hour work day, with normal breaks,
- must take more than 10 unscheduled breaks during an average eight-hour work day lasting as long as 30 minutes each due to symptoms of muscle weakness, chronic fatigue, pain, and adverse side effects of medications,
- must elevate feet or legs for as much as 25 percent of an eight-hour work day due to symptoms of pain,
- only rarely carry less than 10 pounds,
- never carry 10 pounds or more,
- only rarely twist, stoop, or bend,
- only grasp, turn, or twist objects with his hands 15 percent of the time,
- only do fine manipulations with fingers 15 percent of the time,
- only reach overhead with his arms 15 percent of the time,
- must avoid even occasional exposure to high humidity, fumes, gases, air conditioning, cigarette smoke, dust, outdoor cold or heat, and cleaners, and
- must be absent from any work more than 4 days a month as a result of his medical symptoms or required treatment.

(Tr. 320-322).

The record also shows that Dr. Barton completed a Medical Source Statement -

5

Mental form dated July 31, 2004, assessing Plaintiff's mental functioning. (Tr. 323). Dr. Barton again noted relevant diagnoses of Chronic Pain Syndrome, Irritable Bowel Syndrome (IBS), Generalized Anxiety Disorder (GAD), Panic Attacks, and Fatigue. (Tr. 323). Dr. Barton found that the Plaintiff would not be able to perform on a "regular and continuing basis" the following work-related activities:

- To understand, remember, and carry out simple instructions,
- To maintain attention and concentration to perform simple work-related functions,
- To make and carry out simple work-related decisions,
- To respond appropriately to superversion, co-workers, and usual work situations,
- To deal with and adapt to changes in a routine work setting,
- To interact appropriately with the general public,
- To sustain an ordinary routine without special supervision, and
- To complete a normal workday or workweek without undue interruptions from psychologically based symptoms.

(Tr. 323). In support of these findings, Dr. Barton explicitly noted he relied upon his own personal exams of Plaintiff, his treating relationship with Plaintiff, the nature of the Plaintiff's diagnosed impairments, the known side effects of Plaintiff's required medications, a review of the Plaintiff's medical records, specific clinical test results, and credible subjective reports of the Plaintiff. (Tr. 323).

    Finally, the record shows that Dr. Barton completed an Attending Physician's

Statement dated December 29, 2004 for Unum Provident, Plaintiff's private disability insurance company. (Tr. 341-345). Diagnoses noted for Risinger by Dr. Barton on this form included Chronic Pain Syndrome, Fibromyalgia, Fatigue, and Bipolar Disorder. (Tr. 342). Restrictions imposed on Plaintiff by Dr. Barton at that time included:

- Unable to stand for more than 10 minutes every hour,
- Limited to lifting up to 10 pounds, and even this only occasionally,
- Bending and kneeling only occasionally,
- Pushing and pulling up to 5 pounds, and even this only occasionally,
- Never crawling, climbing stairs, or reaching above shoulders,
- Maximum of 2 hours of sedentary activity in an 8-hour workday, and
- Limited ability to "function with work and in society."

(Tr. 342, 344-345).

In addition to the treatment and opinions of Dr. Barton, the record also shows that David Engelking, M.D., examined Risinger on July 12, 2005. (Tr. 372-75). Tests showed that Plaintiff had no tenderness, a good range of motion and good strength. (Tr. 374). The neurological examination was normal with normal sensation, good heel to toe walking, and no atrophy in the arms or legs. (Tr. 374). Dr. Engelking observed no swelling, tenderness, redness, deformities, or spasms about the shoulder, elbows, wrists, knees, hips, ankles, neck or back. (Tr. 374). Straight leg raising was normal. (Tr. 374). Gait was normal (Tr. 374). Dr. Engelking noted that Plaintiff did not appear depressed. Plaintiff's Brief at 25-26.

Norman J. Simon, D.O., a rheumatologist, examined Plaintiff on September 17, 2003. (Tr. 289). Dr. Simon found no evidence of active soft joint tissue swelling or effusion and he had "only 8 of 18 positive fibromyalgia tender points demonstrated." (Tr. 289). Dr. Simon found "no proximal muscle weakness, neck flexor, deltoid, hip flexor muscle groups." (Tr. 289). Plaintiff's Brief at 23.

A Medical Source Statement-Mental filled out by Marilyn Corson, a psychiatric/mental health nurse practitioner, on May 9, 2006, found that Risinger was mildly limited in the ability to respond appropriately to changes in the work setting. (Tr. 448). Ms. Corson found Plaintiff was "not significantly limited" or only "mildly limited" in 17 out of 20 mental abilities, had only three moderate mental limitations, and did not have any marked mental limitations. (Tr. 446-48).

Risinger's application was denied and a subsequent hearing was held on April 19, 2005 before Administrative Law Judge George R. Wilhoit. (Tr. 453-486). On March 1, 2006, the ALJ issued a decision finding Risnger capable of performing his past relevant work and, thus, denied benefits. (Tr. 14-25). The Plaintiff filed a timely Request For Review before the Appeals Council on March 15, 2006, submitting as a part of that appeal 69 additional pages of medical evidence for the consideration of the Commissioner, including the Medical Source Statement-Mental filled out by Marilyn Corson. (Tr. 5, 9-11, 384-452). On June 20, 2006, Plaintiff's Request For Review was denied by the Appeals Council, acknowledging the submission of the new evidence but finding that it didn't affect the ALJ's decision. (Tr. 8-11).

8

**II. Discussion**

To establish entitlement to benefits, Risinger must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

After consideration of the entire record, the ALJ found that Risinger had fibromyalgia syndrome, anxiety, depression, and irritable bowel syndrome (Tr. 22). The ALJ found, however, that Risinger did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulation No. 4. (Tr. 22). The ALJ found that Risinger's impairments would not preclude him from performing his past work. (Tr. 22). Consequently, the ALJ found Risinger was not disabled. Substantial evidence supports that finding.

Risinger raises two issues in his appeal. First, he argues that the ALJ failed to give greater weight to the opinion of Dr. Barton, Risinger's primary care physician, instead of those of two government-paid consultative experts. Second, he argues that the Commissioner erred in not remanding the case to the ALJ to consider the 69 pages of additional evidence submitted to the Appeals Council after the ALJ's decision.

**A. Whether the ALJ Weighed Dr. Barton's Testimony Appropriately**

The ALJ overstated the severity of Dr. Barton's assessment when he suggested that Barton found Risinger "virtually bedfast." This comment was apparently based on statements in a July 31, 2004 medical assessment form in which Barton found that

9

Risinger must rest more than 10 times during a work day for an average of 30 minutes at a time. (Tr. 321). However the same form showed that Risinger had the ability to walk for up to two hours at a time and could sit for at least two hours. Dr. Barton did not say or imply that Rissenger was "virtually bedfast".

The ALJ also understated the evidence supporting Risinger's symptoms when he wrote that

> The record is devoid of *any* evidence showing a significant degree of muscle atrophy, paravertebral muscle spasm, sensory or motor loss, reflex abnormality, gait disturbance, or reduced range of motion of the spine or joints, an indication that claimant continues to move about on a fairly regular basis. Moreover, there is no diagnostic evidence of fibromyalgia syndrome or connective tissue disorder to substantiate the claimant's complaints of debilitating pain.

(Tr. 20). On the contrary, there is evidence in Barton's treatment notes that Risinger at least complained of paravertebral muscle spasms (Tr. 249, 253, 255, 269, 273, 319, 399); sensory or motor loss (i.e., motor weakness) (Tr. 288, 318-319, 329, 342, 356, 382, 387, 391, 393); gait disturbance (i.e., problems walking) (Tr. 288, 330, 398); reduced range of motion of the spine or joints (Tr. 239, 249, 253, 255, 269, 273, 288, 321, 395, 398, 399, 401, 403, 405, 406, 407, 409); and diagnostic evidence of fibromyalgia syndrome (Tr. 113-114, 289-290, 318-319).

Dr. Simon, the rheumatologist who examined Risinger, also diagnosed Risinger with "generalized myofacial pain syndrome, possibly consistent with fibromyalia" and "panic disorder". (Tr. 290).

Although Dr. Taylor, the gastroenterologist who examined Risinger, did not

10

diagnose Risinger with any specific malady, he did observe that irritable bowel syndrome is a component of fibromyalgia which had been diagnosed. (Tr. 113)

While the ALJ may have overstated his reasoning, the relevant issue is whether there is substantial evidence in the record to support the ALJ's decision to reject Dr. Barton's assessment of Risinger's limitations. Having considered the record as a whole, the Court concludes that there is.

The ALJ concluded that Dr. Barton's opinions were based on Risinger's subjective complaints rather than on objective medical data and that the subjective complaints themselves were not credible given objective medical evidence to the contrary in the records of other providers. Neither Dr. Simon's notes or Dr. Taylor's notes include any finding that explain Risinger's claim of disabling pain and the ALJ noted objective tests performed by Dr. Engelking were normal. (Tr. 18). Those tests showed that Risinger had no tenderness, a good range of motion and good strength. (Tr. 374). The neurological examination was normal with normal sensation, good heel-to-toe walking, and no atrophy in the arms or legs. (Tr. 374). Dr. Engelking observed no swelling, tenderness, redness, deformities, or spasms about the shoulder, elbows, wrists, knees, hips, ankles, neck or back. (Tr. 374). Straight leg raising was normal. (Tr. 374). Gait was normal. (Tr. 374).

Dr. Taylor, also found normal objective results. (Tr. 115). Similarly, on September 17, 2003, Dr. Simon found no evidence of active soft joint tissue swelling or effusion and noted that Risinger had "only 8 of 18 positive fibromyalgia tender points demonstrated." (Tr. 289). Dr. Simon found "no proximal muscle weakness, neck flexor, deltoid, hip

11

flexor muscle groups." (Tr. 289). At worst, Simon diagnosed "[g]eneralized myofascial pain syndrome, possibly consistent with fibromyalgia." (Tr. 290). It is significant that all the medical sources of record, other than Dr. Barton, found only minimal abnormalities. An ALJ may not discount allegations of disabling pain solely on the lack of objective medical evidence, but a lack of objective medical evidence is a factor an ALJ may consider in determining a claimant's credibility. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004), citing *Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000).

In particular, Risinger faults the ALJ for discounting Dr. Barton's July 31, 2004 medical assessment form. (Tr. 318-22). Plaintiff's Brief at 13-18. As noted earlier, however, that form is both internally and externally inconsistent with the balance of the record. "Physician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). In that form, Dr. Barton indicated that Risinger can either sit continuously for 10 minutes or four hours, and could stand for five minutes or two hours. (Tr. 320). The form indicates that Risinger must rest more than 10 times during a work day for an average of 30 minutes at a time which amounts to at least 330 minutes or five and one-half hours of rest during the work day. (Tr. 321). This is inconsistent with the assessment itself which apparently indicates that Risinger can stand/walk two hours and sit for two hours total in an eight hour day.

Dr. Barton's opinions about Risinger's mental limitations were similarly inconsistent with the record. (Tr. 323). Essentially, Dr. Barton found that Risinger did not

12

have the mental capacity to perform any mental functioning in a full-time work environment, checking "no" to all mental abilities. (Tr. 323). If Risinger were so mentally impaired, one would have expected him to obtain significant mental health treatment from a specialist. Despite the list of psychotropic drugs prescribed to Risinger at various times, the ALJ noted that he had never been to see a psychiatrist or psychologist for therapy. (Tr. 18). Moreover, Dr. Barton's opinion of very severe mental limitations was contradicted by the opinions of psychologist Steven T. Akeson, Psy.D. (Tr. 296-97), who found Risinger's ability to perform work-related functions were only slightly impaired, and that Risinger was able to understand and remember complex instructions, was able to sustain concentration and persistence with moderately complex tasks, and was able to interact socially and adapt to his environment. (Tr. 296-97)

 Risinger argues that Dr. Barton's opinion about his mental abilities is supported by Ms. Corson's opinions, which were submitted after the ALJ's decision. Plaintiff's Brief at 28-30. Far from supporting Dr. Barton's opinion, Corson's actually provides further evidence that Dr. Barton's opinion is inconsistent with the record as a whole. Corson found Risinger had no significant limitation in 13 out of 20 mental abilities, and was either "not significantly limited" or only "mildly limited" in 17 out of 20 mental abilities. (Tr. 446- 47). She found that Risinger had only three moderate mental limitations and did not have any marked mental limitations. (Tr. 446-47). In contrast, Dr. Barton found that Risinger did not have the mental capacity to perform any mental functioning in a full-time work environment. (Tr. 323).

13

Corson's opinions contradict Dr. Barton's opinions regarding the ability to understand, remember and carry out very short and simple instructions, the ability to maintain attention and concentration, the ability to perform activities within a schedule, the ability to deal with co-workers and the ability to interact with the general public, and the ability to maintain socially appropriate behavior. (Tr. 323, 447-48). Thus, Dr. Barton's opinion is at odds with both Corson's opinion and especially Dr. Akeson's opinion who, as a licensed psychologist, is a specialist in treating mental problems. (Tr. 296-97). More weight is generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. *See* 20 C.F.R. §§ 404.1527(d)(5) and 416.927(d)(5) (2005). *See also Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998); *Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995). Moreover, Corson's opinion was far more consistent with Dr. Akeson's opinion than

it was with Dr. Barton's opinions.

The ALJ also noted that although Risinger had a good work history, Risinger was supported by a long-term disability insurance policy and had no pressing need to seek employment. (Tr. 20, 458). The Eighth Circuit has held that an ALJ may discount a claimant's subjective complaints for, among other reasons, that he appeared to be motivated to qualify for disability benefits. *See Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) ("[T]he ALJ found that Eichelberger had objectively determinable impairments, but also noted that her incentive to work might be inhibited by her

14

long-term disability check of $1,700 per month).

In the final analysis, the ALJ did not err by rejecting Dr. Barton's extreme assessment which is largely unsupported by any objective evidence.

### B.     The Appeals Council properly considered the additional evidence.

Risinger argues that the Appeals Council did not appropriately consider the evidence which was submitted after the ALJ's decision. Plaintiff's Brief at 28-30. The Appeals Council must consider additional evidence if it is new, material, and relates to a time period before the ALJ's decision. 20 C.F.R. § 404.970(b); *see Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996); *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). Once it is clear that the Appeals Council has considered newly submitted evidence, the Court does not evaluate the Council's decision to deny review based on new evidence; instead, the role of the Court is limited to deciding whether the ALJ's determination is supported by substantial evidence on the record as a whole, including new evidence submitted after the determination was made. *See Stephens v. Shalala*, 50 F.3d 538, 541 (8th Cir. 1995); *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). *See also Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). New evidence not considered by the Appeals Council will be considered by the reviewing court only on a showing of materiality and good cause for not incorporating it in the earlier proceedings. *See Stephens*, 50 F.3d at 541; *Mackey v. Shalala*, 47 F.3d 951, 952 (8th Cir. 1995).

In this case, the Appeals Council specifically considered the new evidence and

15

found that the additional evidence did not provide a basis for changing the ALJ's decision (Tr. 6-9). The Appeals Council's decision is amply supported in the record. To be material, new evidence must be non-cumulative, relevant, and probative of a claimant's condition during the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination. *See Woolf v. Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993). *See also Sullins v. Shalala*, 25 F.3d 601, 604-05 (8th Cir. 1994) (psychiatric report dated one month after the ALJ's decision was too late to be considered). In this case, as was noted above, Ms. Corson's evaluation of Risinger's mental abilities actually contradicts Dr. Barton's opinions about Risinger's mental abilities, and supports the ALJ's discounting of Dr. Barton's opinions. (Tr. 322). The balance of the "new" evidence was records from the Barton Family Medical Center. (Tr. 385-452). Although the records are from a different period, they are similar to records from the same medical center, already in the record and considered by the ALJ. (Tr. 237-88).

In sum, the Appeals Council considered all the new evidence and found that the ALJ's decision was supported by substantial evidence in the record as a whole, including the newly submitted evidence. (Tr. 6-9). The Court agrees with that assessment. Under these circumstances, remand for further consideration is inappropriate. *See Flynn v. Chater*, 107 F.3d 617, 621 (8th Cir. 1997) (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)).

**III.    Conclusion**

Accordingly, it is hereby

ORDERED that Risinger's Motion for Summary Judgment [Doc. # 13] is

DENIED.  The decision of the ALJ is AFFIRMED.


      S/NANETTE K. LAUGHREY
      NANETTE K. LAUGHREY
      United States District Judge

Dated:  June 27, 2008
Jefferson City, Missouri